IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

CLIFTON JACKSON, HELEN NOEL,
WILLIAM NOEL                                    Plaintiffs-Appellants,


V.                                              CA NO. 25-60216


CITY OF JACKSON, MISSISSIPPI,                   Defendant-Appellee.

On Appeal from the United States District Court
for the Southern District of Mississippi
**BRIEF FOR APPELLANTS**

BRENT HAZZARD, MSB #99721
SCHWARTZ & ASSOCIATES, P.A.
162 E. Amite Street
Post Office Box 3949
Jackson, Mississippi 39207-3949
Telephone: (601) 988-8888
Facsimile: (601) 948-3822
bhazzard@1call.org


RONALD E. STUTZMAN, JR., MSB #101454
THE STUTZMAN LAW FIRM, PLLC
106 Luckney Station Road, Suite B
Flowood, Mississippi 39232
Telephone: (769) 208-5683
Facsimile: (601) 202-3022
rstutzman@stutzmanlawfirm.com
**Attorneys for Plaintiffs-Appellants**

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities pursuant to Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

**Plaintiffs-Appellants:**

Clifton Jackson
Helen Noel
William Noel

Attorneys for Plaintiffs-Appellants:
Brent Hazzard, Esq., Schwartz & Associates, P.A.
Emily Bradley, Esq., Schwartz & Associates, P.A. (district court only)
Ronald E. Stutzman, Jr., Esq., The Stutzman Law Firm, PLLC

**Defendant-Appellee:**

City of Jackson, Mississippi

Attorneys for Defendant-Appellee:
Drew M. Martin, Esq., Office of the City Attorney
Jason Lee Nabors, Esq. Office of the City Attorney


/s/ ***Brent Hazzard***
Brent Hazzard
Attorney for Plaintiffs-Appellants

## STATEMENT REGARDING ORAL ARGUMENT

Appellants respectfully request oral argument. This case involves complex issues of constitutional law, including procedural due process and the nature of property interests in public utilities, which would benefit from the interactive forum that oral argument provides. The extensive and convoluted factual background, spanning years of municipal mismanagement, federal oversight, and multiple related lawsuits, can be more clearly elucidated through a dialog with the Court. Appellants believe that oral argument will materially assist the Court in resolving the critical questions of standing, futility of amendment, and the adequacy of state remedies, which were central to the district court's dismissal of this important public interest litigation.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS …………………………….…..... ii

STATEMENT REGARDING ORAL ARGUMENT ...…………………….….... iii

TABLE OF CONTENTS …...……………………………………………….... iv

TABLE OF AUTHORITIES …………………………………………………... vi

JURISDICTIONAL STATEMENT ………...…………………………….….... 1

STATEMENT OF ISSUES PRESENTED FOR REVIEW ………...………...... 2

STATEMENT OF THE CASE ............................................................................ 3

    A. Nature of the Case ……………………………………………….….... 3

    B. Course of Proceedings and Disposition Below …………..…………… 4

    C. Statement of Facts …………………………………….…………….. 5

SUMMARY OF THE ARGUMENT ………………………………….….... 7

ARGUMENT ……………………………………………..………..... 9

    I. STANDARD OF REVIEW ……………………………...………..... 9

    II. THE DISTRICT COURT ERRED IN DISMISSING THE
       COMPLAINT FOR LACK OF STANDING...................................... 9

       A. Appellants Alleged a Concrete and Particularized
          Injury-in-Fact…………..…………………….…….….... 10

       B. The Injury is Fairly Traceable to the City
          and Redressable by the Court……………….……….….... 12

III. THE DISTRICT COURT ERRED IN HOLDING
      APPELLANTS FAILED TO STATE A CLAIM FOR
      A VIOLATION OF PROCEDURALDUE PROCESS..………..…... 13

      A. Appellants Were Deprived of a
      Protected Property Interest………..…………..…….................... 14

      B. The Process Provided by the City
      Was Constitutionally Inadequate........................................................... 15

IV. THE DISTRICT COURT ABUSED
    ITS DISCRETION IN DENYING LEAVE
    TO AMEND AS FUTILE …………………………..…………..…….... 17

V. THE DISTRICT COURT ERRED
   IN DISMISSING THE STATE
   LAW BREACH OF CONTRACT CLAIM …….…………………….......... 18

VI. THE DISTRICT COURT ERRED
    BY DISMISSING THE CLASS
    ALLEGATIONS AS DERIVATIVE
    OF ITS FLAWED STANDING
    AND MERITS ANALYSIS ........................................................................ 19


CONCLUSION ................................................................................................. 20

CERTIFICATE OF SERVICE ……………………………………………....... 21

CERTIFICATE OF COMPLIANCE ……………………………………….…..... 22

# TABLE OF AUTHORITIES

**Cases**                                                              **Page No.**

*Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564 (1972) ……………..... 14

*Carmichael v. City of Greenville*, 112 Miss. 426, 73 So. 278 (1916) .................. 18

*Clinton v. City of New York*, 524 U.S. 417 (1998) ……………...…………..... 10

*Crane v. Johnson*, 783 F.3d 244 (5th Cir. 2015) …………….....……………..... 11

*James v. City of Dallas*, 254 F.3d 551 (5th Cir. 2001) ........................................ 19

*Logan v. Zimmerman Brush Co.*, 455 U.S. 422 (1982) …………..…………….... 16

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ………………....….. 10, 11

*Mathews v. Eldridge*, 424 U.S. 319 (1976) …………………………....…….... 15

*Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1 (1978) ….…………….... 14

*Mississippi Power Co. v. Cochran*, 167 Miss. 705, 147 So. 473 (1933) ….….........11

*Paterson v. Weinberger*, 644 F.2d 521 (5th Cir. 1981) ........................................ 15

*Ramming v. United States*, 281 F.3d 158 (5th Cir. 2001) ……………………….... 9

*Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26 (1976) ……...……..... 12

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) ……...………………………..... 11

*Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83 (1998) .................... 12

*Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863 (5th Cir. 2000) …………... 9, 17

*Tucker v. Hinds County*, 558 So. 2d 869 (Miss. 1990) …………………….…..... 14

*United Mine Workers of Am. v. Gibbs*, 383 U.S. 715 (1966) ………….…..….... 19

*United States v. James Daniel Good Real Prop.*, 510 U.S. 43 (1993) …...…….... 15

*Uzuegbunam v. Preczewski*, 141 S. Ct. 792 (2021) ……………………………... 10

*Ware v. Associated Milk Producers, Inc.*, 614 F.2d 413 (5th Cir. 1980) …..…... 16

*Wilson v. Birnberg*, 667 F.3d 591 (5th Cir. 2012) .......................................... 13, 14

**Statutes**

28 U.S.C. § 1291 ................................................................................................. 1

28 U.S.C. § 1331 …………………………………………………………….... 1

28 U.S.C. § 1367(c)(3) ...................................................................................... 18

 42 U.S.C. § 1983 ………………………………………………………….. *passim*

**Rules**

Fed. R. Civ. P. 12 ......................................................................................... *passim*

Fed. R. Civ. P. 15(a)(2) ……………………………………………………….... 17

**Constitutional Provisions**

U. S. Const Amend. XIV ……………………………………………………... *passim*

# JURISDICTIONAL STATEMENT

The district court had subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as Appellants' claims arise under the Constitution of the United States, specifically the Fourteenth Amendment's Due Process Clause, as enforced through 42 U.S.C. § 1983.

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. The district court entered a Final Judgment dismissing Appellants' case with prejudice on March 31, 2025. (ROA.234). Appellants timely filed their Notice of Appeal on April 20, 2025. (ROA.235).

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.  Whether the district court erred in dismissing Appellants' Complaint for lack of standing, where Appellants alleged concrete economic and property injuries by being charged for water that was undrinkable, contaminated, delivered at low pressure, or not delivered at all.

2.  Whether the district court erred in holding that Appellants failed to state a claim for a violation of procedural due process under 42 U.S.C. § 1983, where the City provided no pre-deprivation process to challenge charges for non-conforming water and where the administrative process was admittedly inadequate to remedy these specific injuries.

3.  Whether the district court abused its discretion by denying Appellants' Motion to Amend their Complaint as futile, where the proposed amendments clarified their injuries, added factual detail from public records about the systemic water failures, and sought to include the entities responsible for the ongoing management of the water system under a federal consent decree.

4.  Whether the district court erred in declining to exercise supplemental jurisdiction over Appellants' state law breach of contract claim where the claim was inextricably intertwined with the federal due process claims arising from the same common nucleus of operative facts.

5.  Whether the district court erred by dismissing the class allegations on the

grounds that the named Appellants lacked a valid claim, where that predicate

conclusion was itself erroneous and Appellants' injuries are identical to those

of the proposed class.

## STATEMENT OF THE CASE

### A. Nature of the Case

This is an appeal from the district court's order dismissing a class action

complaint brought by residents of Jackson, Mississippi, against the City of Jackson

("the City") for systemic failures in its municipal water system. Appellants, long-

suffering residents, alleged that the City breached its contractual and constitutional

duties by providing water that was frequently contaminated, undrinkable, and

delivered with inadequate pressure or not at all, while continuing to charge them

for this non-conforming service. They sought damages and injunctive relief for

violations of their procedural due process rights under 42 U.S.C. § 1983 and for

breach of contract.

The district court dismissed the Complaint, finding that the Appellants

lacked standing and had failed to state a claim. The court reasoned that because

Appellants' water service was never terminated, they suffered no cognizable

constitutional injury. It further held that the availability of an administrative

process for billing disputes, even one that admittedly did not cover claims for poor

water quality, satisfied the requirements of due process. Finally, the court denied

Appellants' motion to amend the complaint as futile. This appeal followed.

### B. Course of Proceedings and Disposition Below

This litigation is the second attempt by these Appellants to seek redress for

the City's failed water system. They first filed suit on November 9, 2020. *Jackson,*

*Noel, & Noel v. City of Jackson* ("*Noel I*"), CA No. 3:20-cv-00719-DPJ-FKB.

(ROA.10-11). After the City moved to dismiss, the parties agreed to a dismissal

without prejudice on August 25, 2021, to allow Appellants to exhaust the City's

administrative remedies. (ROA.11).

Appellants diligently attempted to engage that process. For months, their

requests for a hearing were met with silence or statements that the City's hearing

officer was unavailable. (ROA.11, 17-27). Only after Appellants filed the instant

action (*Noel II*) on November 15, 2022, and sought a temporary restraining order

to prevent a service shut-off to Rev. Jackson, did the City finally grant them a

hearing. (ROA.11).

At that hearing, the administrative judge explicitly stated that the proceeding

would *only* address the accuracy of the bills and would *not* consider claims related

to "defective water meters from the Siemens case, low pressure, boil water notices,

water outages, or contaminants in the water." (ROA.164-165, 171-72, 209).

Following this limited administrative process, the City moved to dismiss the *Noel II* complaint on July 7, 2023. (ROA.72).

On August 21, 2023, the district court, after a status conference, directed Appellants to file a motion to amend their complaint. (ROA.166). Appellants complied, filing a Proposed Amended Complaint that clarified their injuries, added factual allegations from the related federal government enforcement action against the City, and sought to add JXN Water, Inc. (the third-party manager) and the United States as defendants. (ROA.168-179).

The City opposed the amendment and supplemented its motion to dismiss. (ROA.180, 205). On March 31, 2025, the district court issued an Order and Final Judgment. (ROA.218, 234). The Court denied the Motion to Amend as futile and granted the City's Motion to Dismiss with prejudice. The Court found Appellants lacked Article III standing because their alleged injuries, being forced to buy bottled water and endure boil water notices, were not "concrete and particularized" since their water service was never terminated. (ROA.226). The Court also held that Appellants failed to state a due process claim because they did not demonstrate a deprivation of a protected property interest and because the City's administrative process was constitutionally adequate. (ROA.226-27).  Appellants filed a timely Notice of Appeal on April 20, 2025. (ROA.235).

## C. Statement of Facts

The City of Jackson's water system has been in a state of crisis for years, a fact well-documented in public records and acknowledged by the City itself.

### 1. The Siemens Debacle and the City's Admissions

In 2013, the City contracted with Siemens Industry, Inc. for a $90 million overhaul of its water meter and billing system. The project was a catastrophic failure. In 2019, the City sued Siemens, admitting in its own complaint that "[m]ore than half of the 60,000 water meters were installed incorrectly," leading to "grossly inaccurate bills and, in some instances, failed to generate bills at all." (ROA.8). The City acknowledged that these failures caused residents to "receive no bill at all for significant periods of time, only to eventually receive an unusually high bill based on months of purported water usage." (ROA.8-9). The City ultimately settled with Siemens for $89 million, but the systemic problems persisted. (ROA.9).

### 2. The Federal Government Intervenes

The situation deteriorated to the point that on November 29, 2022, the United States Department of Justice, on behalf of the EPA, filed suit against the City for violations of the Safe Drinking Water Act. *United States of America v. The*

*City of Jackson, Mississippi*, CA. No. 3:22-cv-686-HTW-LG. (ROA.86,172). The government's complaint detailed a system on the verge of collapse, citing "multiple raw water intake pumps failed," a "catastrophic loss of pressure," and periods where residents "had no running water" for "basic safety and hygiene purposes." (ROA.172).

An EPA official declared that between May 2020 and September 2022, the City had issued over 300 boil water notices. (ROA.173). The EPA found an "imminent and substantial endangerment" to citizens due to the potential presence of *E. Coli, Cryptosporidium*, and *Giardia* in the drinking water, as well as persistent violations of the federal Lead and Copper Rule. (ROA.173-74). This led to a federal consent decree and the appointment of an Interim Third-Party Manager, Ted Henifin, operating as JXN Water, Inc., to manage the system. (ROA.174).

### 3. The Appellants' Experiences

Appellants are emblematic of the residents trapped in this crisis. They have been consistently billed by the City for a service that fails to meet basic standards of safety and utility. Reverend Clifton Jackson and his wife have not trusted the tap water for years due to its foul taste and smell. (ROA.174). They have been forced to buy bottled water for all drinking, cooking, and personal hygiene. *Id.*

Rev. Jackson even adds bleach to his bathwater out of concern for its cleanliness. *Id.* He experienced boil water notices on August 20, 2021, until August 26, 2021; September 20, 2021, until September 22, 2021; October 7, 2021, until October 12, 2021; and April 27, 2022, to April 29, 2022. *Id.*

Helen and William Noel have faced similar struggles for nearly a decade. (ROA.174). They consistently buy bottled water after finding "metal flakes inside the filters of their sinks." *Id.* They have experienced periods with no water and times when their bathwater ran brown. *Id.* They were subject to boil water notices on July 17, 2020, until July 24, 2020, and on July 19, 2020, until an unknown date. (ROA.174, 175). They had one of the defective Siemens water meters, but the City never informed them if it was defective or how their bill was corrected as a result. (ROA. 175). The entire City of Jackson was under boil water notices from June 24, 2022, until July 8, 2022; July 29, 2022, until an unknown date; and August 8, 2022, until an unknown date. (ROA.174-75).

### 4. The Inadequate Administrative Process

Forced to pursue administrative remedies by the dismissal of *Noel I*, Appellants sought a hearing. (ROA.11) When they finally obtained one, the administrative judge unequivocally limited the scope of the hearing. As attested by Appellants' counsel and confirmed by the City's own documentation closing the

Noels' case, the hearing officer would not consider the very harms that form the basis of this lawsuit: defective meters, contaminated water, low pressure, and water outages. (ROA.171-72, 209, 165). The process was limited strictly to correcting clerical billing errors. While the Noels received a credit of $1,159.49 for an erroneous charge and Rev. Jackson was enrolled in a bill forgiveness program, they were denied any forum to seek a remedy for being charged for years of unusable, unsafe water. (ROA.172). The Noels' continuance was "cancelled" without any explanation. (ROA.165).

## SUMMARY OF THE ARGUMENT

The district court committed reversible error by dismissing Appellants' Complaint. The court misapplied the law of standing, procedural due process, and futility of amendment, effectively closing the courthouse doors to citizens with concrete and ongoing injuries.

First, the district court erred in finding Appellants lacked Article III standing. The court's conclusion that there is no injury-in-fact without a service termination is a clear legal error. Appellants alleged two distinct and concrete injuries: (1) economic injury, having paid for a service that was not provided as promised (i.e., safe, potable water); and (2) deprivation of their property right in the funds they paid to the City for non-conforming goods. This is a classic,

tangible injury, not a generalized grievance. They were forced to spend their own money on bottled water as a direct result of the City's failure. The injury is traceable to the City's mismanagement and is redressable by damages.

Second, the district court erred in dismissing the procedural due process claim. Appellants have a protected property interest both in the continuation of their water service and in the money they pay for that service. The City deprived them of this property by charging them for water that was unusable and unsafe. The City provided no pre-deprivation process to challenge these charges. The post-deprivation process was constitutionally inadequate because, by its own admission, it was not designed to address, and explicitly refused to hear, claims based on water quality. A "remedy" that refuses to remedy the actual harm is no remedy at all.

Third, the district court abused its discretion in denying leave to amend the complaint as futile. The proposed amendments were not futile; they added critical factual support from the public record of the federal enforcement action, clarifying that Appellants' experiences were part of a recognized, systemic failure. These changes directly addressed the core issues of the case and would have easily survived a motion to dismiss.

Finally, because the federal claims were improperly dismissed, the court's

decision not to exercise supplemental jurisdiction over the state law breach of contract claim was also in error. The contract claim arises from the exact same set of facts as the constitutional claims and should proceed in the same forum.

This Court should reverse the judgment of the district court and remand the case for proceedings on the merits of the Amended Complaint.

## ARGUMENT

### I. STANDARD OF REVIEW

This Court reviews a district court's grant of a motion to dismiss under Rules 12(b)(1) and 12(b)(6) de novo. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). The court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff. *Id.* A district court's denial of a motion to amend a complaint is reviewed for abuse of discretion. *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 872 (5th Cir. 2000). However, when the denial is based on a determination of futility, the court reviews the legal conclusion of futility de novo. *Id.* at 873.

### II. THE DISTRICT COURT ERRED IN DISMISSING THE COMPLAINT FOR LACK OF STANDING.

The district court's holding that Appellants lack standing rests on the erroneous legal premise that the only cognizable injury in a utility case is the actual

termination of service. (ROA.225-26). This fundamentally misunderstands the standing doctrine and the nature of Appellants' injuries. The district court compounded this error by misapplying bedrock standing precedent from the Supreme Court and this Circuit. Appellants have pleaded a classic injury-in-fact sufficient to establish Article III standing.

To establish standing, a plaintiff must show (1) an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent; (2) a causal connection between the injury and the defendant's conduct; and (3) a likelihood that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

### A. Appellants Alleged a Concrete and Particularized Injury-in-Fact.

Appellants suffered tangible economic harm. They paid the City for a product, safe potable water, that the City failed to deliver. Instead, they received water that was contaminated, foul-smelling, discolored, and at times, non-existent. (ROA.174-75). This is not an "abstract" or "hypothetical" injury. Being deprived of the benefit of one's bargain is a quintessential injury-in-fact. *See, e.g., Clinton v. City of New York*, 524 U.S. 417, 432-33 (1998) (finding standing for parties who lost a financial benefit).

Furthermore, Appellants were forced to mitigate the City's failure by

spending their own money to purchase bottled water for drinking, cooking, and basic hygiene for years. (ROA.174). This out-of-pocket economic loss is a "classic and paradigmatic" form of concrete injury. *See Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 801 (2021) (noting that even a claim for nominal damages for a past injury is sufficient for standing). The district court dismissed these tangible losses as mere "subjective inconveniences." (ROA.225). This is a mischaracterization. There is nothing subjective about having to pay twice for an essential good: once to the City for a defective product and a second time to a store for a usable one.

The district court's reliance on the fact that service was never terminated is misplaced. While termination is certainly *an* injury, it is not the *only* injury that can confer standing. The Supreme Court of Mississippi has long recognized that a utility customer has a right to dispute charges for non-conforming service, even without a termination. *See Mississippi Power Co. v. Cochran*, 167 Miss. 705, 147 So. 473, 475 (1933) (customer has right to contest bill based on defective machinery). The injury is not just the loss of service, but being wrongfully charged for a service not properly rendered. Appellants have a clear property interest in the money they paid to the City, and the City's retention of those funds for a non-conforming good constitutes a concrete injury.

The district court's legal analysis misapplied several key standing cases. In

13

citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992), the court focused on the imminence requirement to defeat a speculative, future harm, but ignored *Lujan*'s core teaching that a "concrete and particularized" injury is required. Here, the injury is not a speculative "some day" intention to observe an animal in a foreign country; it is the daily, actual, and ongoing economic harm of paying for unusable water and purchasing costly alternatives. The district court wrongly equated Appellants' immediate and continuing financial losses with the conjectural injuries of the plaintiffs in *Lujan*.

Similarly, the court misconstrued *Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016). *Spokeo* held that while a "bare procedural violation" like an incorrect zip code might not be a concrete injury, intangible harms and the "risk of real harm" can be. *Id.* at 341-42. The district court overlooked that Appellants' harm is not a "bare procedural violation." It is the very real, tangible harm of receiving contaminated water and the concrete economic injury of paying for it. *Spokeo* supports, rather than defeats, Appellants' standing, as the City's actions created not just a risk of harm, but actual, concrete harm. To dismiss this as a "subjective inconvenience" (ROA.225) is to ignore the reality of what it means to be without safe water.

The court's reliance on *Crane v. Johnson*, 783 F.3d 244 (5th Cir. 2015), is

also misplaced. In *Crane*, this Court found no standing for ICE agents who claimed injury from a departmental policy because their alleged harm, a subjective belief that the policy forced them to violate their oath, was not a cognizable, concrete injury. *Id.* at 253. Appellants here are not alleging a subjective disagreement with government policy. They are alleging direct economic loss and the deprivation of a paid-for essential service. The district court's analogy fails because Appellants' injury is objective and financial, not abstract and psychological like the harm alleged in *Crane*.

### B. The Injury is Fairly Traceable to the City and Redressable by the Court.

The causal link is direct. The City operates the water system. The City's admitted mismanagement, use of defective meters, and failure to maintain the infrastructure directly caused the water to be contaminated and unusable. (ROA.8-9, 172-74). But for the City's actions and omissions, Appellants would not have been forced to buy bottled water and would not have been charged for a defective service.

The injury is also plainly redressable. A judgment awarding compensatory damages would reimburse Appellants for the money they paid for unusable water and the money they spent on replacement water. A declaratory judgment would establish their rights and the City's duties going forward. An injunction could

compel the City to provide adequate procedural remedies for such claims in the future. These are standard judicial remedies that directly address the alleged harm.

The district court's misapplication of *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26 (1976), underscores its error on causation and redressability. In *Simon*, the Supreme Court found no standing because it was "purely speculative" whether an IRS Revenue Ruling caused hospitals to deny care to indigents, as the hospitals' decisions could have been based on other factors. *Id.* at 42-43. Here, there is no speculation. The City is the sole provider of the water and the sole entity charging for it. The injury flows directly from the City's actions, not the independent choices of a third party.

Likewise, the court misread *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83 (1998). In *Steel Co.*, standing was denied for lack of redressability because the defendant had already complied with the reporting statute, and any civil penalties would go to the Treasury, not the plaintiffs. *Id.* at 106-07. Here, the harm is ongoing, as Appellants are continuously charged for defective water, and their past economic injuries remain uncompensated. Unlike in *Steel Co.*, a damages award in this case would directly redress Appellants' economic losses, and injunctive relief would address the ongoing constitutional violation.

The district court erred in its standing analysis by adopting an overly

16

restrictive view of what constitutes an injury and by misapplying controlling

precedent. Appellants have pleaded concrete, particularized, and redressable

injuries.  They have articulated standing to sue.

### III. THE DISTRICT COURT ERRED IN HOLDING APPELLANTS FAILED TO STATE A CLAIM FOR A VIOLATION OF PROCEDURAL DUE PROCESS.

To state a claim for a violation of procedural due process, a plaintiff must

allege (1) a constitutionally protected property interest; (2) a deprivation of that

interest; and (3) a denial of constitutionally sufficient process. *Wilson v. Birnberg*,

667 F.3d 591, 601 (5th Cir. 2012).

### A. Appellants Were Deprived of a Protected Property Interest.

Appellants have at least two distinct property interests protected by the

Fourteenth Amendment. First, they have a right to the continuation of their utility

service. The Supreme Court recognized this in *Memphis Light, Gas & Water Div.

v. Craft*, 436 U.S. 1, 11, 12 (1978), holding that under state law, a public utility

customer has a "legitimate claim of entitlement" to continued service. The

Mississippi Supreme Court is in accord. *Tucker v. Hinds County*, 558 So. 2d 869,

873-74 (Miss. 1990)("[U]tility service has become almost a necessity for safety

and comfort in modern-day life."). The district court wrongly cabined this right to

only apply in cases of actual termination. But the right is not merely to avoid a

shut-off; it is a right to the service itself. Providing contaminated, unusable water is a constructive deprivation of that service. It is like being served a meal of spoiled food; while one has not been denied a plate, one has certainly been denied a meal.

Second, and more simply, Appellants have a protected property interest in their own money. *See Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 571-72 (1972). The City deprived them of this property by charging and collecting payment for a service it did not properly provide. This is a direct deprivation of property. The district court's citation to *Wilson v. Birnberg* is inapposite. In *Wilson*, this Court reaffirmed the long-standing principle that there is no property interest in holding or running for public office. 667 F.3d at 598. That holding has no bearing here. Unlike a speculative interest in a future political position, Appellants possess a tangible, existing property interest in the money they have already paid for a service and a state-created entitlement to that service.

### B. The Process Provided by the City Was Constitutionally Inadequate.

Due process requires, at its core, "notice and an opportunity to be heard." *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 48 (1993). The opportunity to be heard must be granted "at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). The City's process fails

this test. The City provided no pre-deprivation process whatsoever. It sent bills charging for water without any mechanism for a customer to raise a priori challenge based on quality. The only process available was a post-deprivation administrative hearing.

This post-deprivation process was constitutionally deficient because it was not "meaningful." A hearing that, by design, refuses to consider the actual basis of the dispute is a hearing in name only. Appellants' core complaint is not that the City made a math error on their bills; it is that the City charged them for a product that was worthless or harmful. Yet, the City's administrative judge explicitly stated that she would not hear any evidence or argument about water quality, contamination, pressure, or outages. (ROA.164-5). A process that is deaf to the substance of the complaint is a "meaningless" process. Appellants were offered a hearing on Thing A, when their entire injury was based on Thing B.

The district court compounded its error by improperly dismissing the case while ignoring the factual allegations in the complaint and related evidence central to the due process analysis. A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) may be a "facial" attack, which considers only the complaint, or a "factual" attack, which allows the court to consider evidence like affidavits to resolve jurisdictional facts. *See Paterson v. Weinberger*, 644 F.2d 521,

523 (5th Cir. 1981). Here, the City's motion constituted a factual attack by challenging the factual basis of jurisdiction—namely, the adequacy of the administrative remedy.

Therefore, the district court was permitted to, and should have, considered the affidavit of Appellants' counsel (ROA.164) attesting to the fact that the administrative hearing officer explicitly refused to hear claims related to water quality, contamination, or outages. This affidavit directly controverted the City's factual predicate for dismissal. The court's failure to consider this crucial evidence in its 12(b)(1) analysis was an error. Even under a 12(b)(6) analysis, the court was required to accept the well-pleaded facts in the complaint as true, including the allegation that the administrative remedy was a dead end for Appellants' core claims. *See Ware v. Associated Milk Producers, Inc.*, 614 F.2d 413, 414 (5th Cir. 1980). Under either standard, the court erred by ignoring the undisputed inadequacy of the process offered.

The district court also suggested that the availability of state tort remedies satisfied due process, but this argument fails under the reasoning of *Logan v. Zimmerman Brush Co.*, 455 U.S. 422 (1982). In *Logan*, the Supreme Court held that where the "state system itself...destroys a complainant's property interest," the violation is the "established state procedure" itself, not a random, unauthorized act

of a state official. *Id.* at 436. In such cases, a post-deprivation tort remedy is insufficient. Here, the City's administrative process, by its own established procedure, is limited to billing accuracy and explicitly refuses to hear the core of Appellants' property deprivation claims. This systemic failure is the "established state procedure" that destroys Appellants' right to a meaningful hearing. Therefore, under *Logan*, the City's argument that a separate tort action could provide due process is unavailing; the established procedure is itself the constitutional violation. The City cannot create a kangaroo court and then claim its unconstitutional process is cured by the potential for a separate lawsuit.

## IV. THE DISTRICT COURT ABUSED ITS DISCRETION IN DENYING LEAVE TO AMEND AS FUTILE.

Leave to amend should be "freely give[n] when justice so requires." Fed. R. Civ. P. 15(a)(2). A denial based on futility is only proper if the proposed amendment would still be subject to dismissal under Rule 12(b)(6). *Stripling*, 234 F.3d at 873. The proposed Amended Complaint was not futile; it strengthened Appellants' claims and cured any perceived pleading deficiencies.

The proposed amendments detailed specific, concrete injuries that directly contradict the district court's basis for dismissal. The Amended Complaint would have specified periods where the Noels had no water at all, and detailed multiple boil water notices affecting all Appellants, including city-wide notices. (ROA.174-

21

75). A complete lack of water is the ultimate deprivation of service, and a boil water notice is a government admission that the water is unsafe and non-potable, thus non-conforming to the contract. These are not "subjective inconveniences" but concrete harms directly caused by the City, establishing both Article III injury and causation.

Furthermore, the proposed amendments would have incorporated the EPA's formal finding of an "imminent and substantial endangerment" from disease-causing organisms like *E. Coli, Cryptosporidium, and Giardia*, and detailed the City's years-long, systemic failure to comply with the federal lead and copper rule. (ROA.173-74). Pleading these officially documented failures would have provided a powerful factual basis for the concrete injury and causation elements the district court found lacking. Denying leave to add these specific, dispositive facts was a clear abuse of discretion.

The amendments also sought to add the correct parties. With the appointment of the ITPM and the creation of JXN Water, Inc. under a federal consent decree, the landscape of who controls Jackson's water system changed. (ROA.174). Adding JXN Water and the United States was a necessary step to ensure that any prospective relief could be effectively ordered and enforced. Denying the addition of these necessary parties makes a complete remedy

impossible.

The district court's conclusion that the amendments were futile was premised on its same erroneous legal conclusions regarding standing and the adequacy of the administrative process. (ROA.227). As argued above, those conclusions were incorrect. The Amended Complaint clearly alleges a concrete injury (paying for unusable water) and a constitutionally deficient process (a hearing that excludes the basis of the claim). The Amended Complaint is not merely viable; it is strong. The denial of leave to amend was an abuse of discretion based on a flawed de novo review of the claims.

## V. THE DISTRICT COURT ERRED IN DISMISSING THE STATE LAW BREACH OF CONTRACT CLAIM.

A district court may decline to exercise supplemental jurisdiction over state law claims if it has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3). Because the district court improperly dismissed the federal § 1983 claims, its basis for dismissing the supplemental breach of contract claim was also erroneous.

The breach of contract claim is predicated on the same set of facts as the federal claims: the City's failure to provide safe and usable water pursuant to its obligation as a public utility. Under Mississippi law, this obligation is not a mere commercial arrangement but a "covenant running with the land." *Carmichael v.*

*City of Greenville*, 112 Miss. 426, 73 So. 278, 279 (1916). The City's provision of contaminated and unusable water is a clear breach of this fundamental covenant, which is inextricably linked to Appellants' property rights.

Because the state and federal claims "derive from a common nucleus of operative fact," the principles of pendent jurisdiction strongly favor hearing them together. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966). The factual inquiry for both claims is identical: whether the City failed to provide safe and usable water. Separating these claims would lead to duplicative litigation and risk inconsistent results, undermining the core goals of "judicial economy, convenience and fairness to litigants" that animate the doctrine of supplemental jurisdiction. *Id.* at 726. The district court's dismissal of the contract claim should be reversed along with the dismissal of the federal claims.

## VI. THE DISTRICT COURT ERRED BY DISMISSING THE CLASS ALLEGATIONS AS DERIVATIVE OF ITS FLAWED STANDING AND MERITS ANALYSIS.

The district court dismissed Appellants' class allegations with the circular reasoning that because the named Appellants' individual claims failed, the class claims must fail as well. (ROA.232). The court concluded: "Since no named Plaintiff herein has suffered a constitutional injury or an actionable breach of contract, the class claims, thus, must likewise fail." (ROA.232). This conclusion is

built entirely on the flawed legal premises that this brief has already shown to be erroneous.

The foundation of the district court's ruling on the class claims is its holding on standing and failure to state a claim. As demonstrated *supra* in Sections II and III, that foundation is unsound. Appellants have suffered concrete, particularized, and redressable constitutional injuries, and they have stated valid claims for relief under 42 U.S.C. § 1983. Because Appellants' individual claims are viable, the district court's derivative dismissal of the class claims was clear error.

The district court correctly stated the rule from *James v. City of Dallas*, 254 F.3d 551, 563 (5th Cir. 2001), that "a class representative must possess the same interest and suffer the same injury as the class members." (ROA.232). However, the court misapplied this rule by wrongly concluding Appellants suffered no injury. Appellants' injuries are, in fact, identical to those of the class they seek to represent. The harms at issue, receiving and being charged for contaminated water, experiencing frequent boil water notices and service outages, and being denied a meaningful process to challenge these fundamental service failures, are not unique to the named Appellants. They are the common experience of all utility customers in the City of Jackson, stemming from the same systemic failures and unconstitutional policies. Appellants are therefore paradigmatic representatives for

the proposed class. Because the district court's dismissal of the class claims rested entirely on its erroneous dismissal of the individual claims, it too must be reversed.

## CONCLUSION

For the foregoing reasons, the Appellants respectfully request that this Court reverse the district court's Order and Final Judgment, and remand this case with instructions to grant the motion to amend and for further proceedings on the merits of the Amended Complaint.

Dated: June 23, 2025

Respectfully submitted,

/s/ ***Brent Hazzard***
BRENT HAZZARD, MSB #99721
SCHWARTZ & ASSOCIATES, P.A.
162 E. Amite Street
Post Office Box 3949
Jackson, Mississippi 39207-3949
Telephone: (601) 988-8888
Facsimile: (601) 948-3822
bhazzard@1call.org

RONALD E. STUTZMAN, JR., MSB #101454
THE STUTZMAN LAW FIRM, PLLC
106 Luckney Station Road, Suite B
Flowood, Mississippi 39232
Telephone: (769) 208-5683
Facsimile: (601) 202-3022
rstutzman@stutzmanlawfirm.com

**Attorneys for Plaintiffs-Appellants**

## CERTIFICATE OF SERVICE

I hereby certify that on June 23, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ ***Brent Hazzard***
Brent Hazzard

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 6,610 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

/s/ *Brent Hazzard*
Brent Hazzard